IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FLAVOR HOUSE PRODUCTS, INC., )<br>A Delaware Company, and )<br>HARVEST MANOR FARMS, LLC, )<br>A Delaware Limited Liability Company )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>INTERNATIONAL NUT ALLIANCE, )<br>LLC, A New Jersey Limited Liability )<br>Company, )<br>)<br>Defendant. ) | Case No. 1:11-cv-753-WHA<br>(WO) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion to Dismiss or in the Alternative Motion to Compel Arbitration and Stay (Doc. #13) filed by Defendant International Nut Alliance, LLC. ("INA"), a limited liability company organized under New Jersey law with its principal place of business in Ramsey, New Jersey. Plaintiffs Flavor House Products, Inc. ("Flavor House"), a Delaware Corporation with its principal place of business in Dothan, Alabma, and Harvest Manor Farms, LLC, ("Harvest Manor"), a limited liability company organized under Delaware law with its principal place of business in El Paso, Texas, (collectively "Plaintiffs") oppose this motion.

The Plaintiffs filed a Complaint (Doc. #1) in this court on September 12, 2011, against the Defendant. In the Complaint, the Plaintiffs assert four Counts: Count I – Breach of Contract,

Count II – Fraud, Count III – Negligence and Wantonness, and Count IV – Intentional Interference with Business Relations.

The basis of the court's jurisdiction in this case is diversity of citizenship, 28 U.S.C. § 1332, and both the amount in controversy requirement and the complete diversity of citizenship requirement are satisfied and are uncontested.

By the motion under consideration, the Defendant seeks to compel arbitration of Plaintiffs' claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4.  In response to the Defendant's Motion, the Plaintiffs deny that they agreed to arbitrate disputes with the Defendant. (Doc. # 25).

## II. **LEGAL STANDARDS**

As to the law governing this dispute, there appears to be a disagreement between the parties.  Because the Defendant contends that the Plaintiffs assented to the terms from its "Terms and Conditions," the Defendant argues that the law of the state of New Jersey governs this contract dispute.  The Plaintiffs, however, contend that Alabama law governs this dispute.  This difference in law need not be reached at this point in the litigation because New Jersey state law and Alabama state law are substantially identical on the issues presented, as are Third Circuit law and Eleventh Circuit law.  Therefore, this court will rely on both sets of law for its determinations.

Since the existence of an agreement to arbitrate is itself disputed, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1984); *see*

*also* 9 U.S.C. § 4. "Simply put, parties cannot be forced to submit to arbitration if they have not agreed to do so." *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992) (citing *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 478 (1989)).

But, a simple denial of an agreement is not sufficient to defeat a motion to compel arbitration. Both the Third Circuit and the Eleventh Circuit have utilized a summary judgment standard when faced with a motion to compel arbitration supported by facts beyond the complaint, and a denial of the existence of an agreement to arbitrate. Accordingly, presentation of a genuine issue of material fact leaves the court hearing the motion to compel arbitration no choice but to deny it at this time, and set the dispute for trial. *See Chastain*, 957 F.2d at 854 (stating the proper rule to be "[t]o make a genuine issue entitling the [party seeking to avoid arbitration] to a trial by jury [on the arbitrability question], an unequivocal denial that the agreement had been made [is] needed, and some evidence should [be] produced to substantiate the denial.") (internal citations omitted) (brackets in the original); *see also Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 446 (3d Cir. 2003) ("If there is doubt as to whether [an arbitration] agreement exists, the matter, . . . should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."). A denial of a motion to compel arbitration at this point would mean that a genuine issue of material fact as to the existence of an arbitration agreement must be resolved first by a finder of fact, either a jury or this court. *See, e.g.*, *Standard Bent Glass Corp.*, 333 F.3d at 446. This does not mean, however, that the parties may not ultimately end up arbitrating the present matter. That will depend on the resolution first of the issue of the existence of an agreement to arbitrate.

## III. FACTS

The non-disputed facts are presented as follows:

INA is a New Jersey company which specializes in the buying and importation of nuts from foreign countries. Flavor House is an Alabama company and Harvest Manor is a Texas company. Both Plaintiffs are owned by the parent company, Ralcorp Holdings, Inc. These companies began their business relationship in 2007.

In 2007, the Plaintiffs entered into multiple contracts with the Defendant for the purchase of various quantities of bulk nut commodities. The parties' business relationship consisted of the Defendant contacting the Plaintiffs to offer specific quantities of nuts at specified prices, and the Plaintiffs informing the Defendant how much of its product they wanted to purchase. The method of communication as to the formation of each of these purchase orders is in dispute. The Defendant alleges that its offers were made by telephone, email, or fax, and the Plaintiffs allege that each offer was entirely verbal.

Both parties agree that after each order was placed by the Plaintiffs, the Defendant would transmit, either by fax or email, a brief order confirmation form. The Plaintiffs would, upon receiving the order confirmation form, assign a purchase order number and would relay these assignments to INA by fax or e-mail.

The relevant disputed facts are as follows:

The Plaintiffs allege that after each purchase agreement with the Defendant, the Defendant would send a one page order confirmation form which never contained Defendant's "Terms and Conditions" form. The "Terms and Conditions" form contains the arbitration clause which is central to the issue before the court. In addition to not receiving the "Terms and

4

Conditions" form, the Plaintiffs allege that they never received any arbitration agreement language in conjunction with the orders from the Defendant. Moreover, the Plaintiffs allege that they never agreed to arbitrate with the Defendant in the case of a dispute and that this is not a standard practice or procedure of their business. To support these allegations, the Plaintiffs rely on affidavits from Michael Davis, an officer from Flavor House; John Runck, a Vice President of Harvest Manor; and Maria Arreola, a custodian of records for Harvest Manor.

The Plaintiffs also allege that the sales confirmation offered to this court by the Defendant has been altered and is different from the one that they received in three different ways. To support this allegation, the Plaintiffs provide their copy of the same order confirmation that the Defendant presented to this court, which is indeed different from the one that the Defendant offered.

Lastly, the Plaintiffs allege that their business relationship with the Defendant deteriorated when the Defendant refused to deliver the nuts they ordered for the agreed upon price. Moreover, the Plaintiffs allege that the Defendant attempted to charge the Plaintiffs more than the agreed upon amount for the orders. The Plaintiffs allege that they have suffered damages because of the Defendant's conduct.

The Defendant alleges that it sent a copy of its "Terms and Conditions" with each of its transmitted order confirmation forms, and that doing so was a part of its standard practice and procedure. Furthermore, the Defendant alleges that it is standard practice in the food commodities industry to resolve disputes with binding arbitration and supports this contention with copies of other nut industry companies' terms and agreements, case law, and affidavits from Gene and Regina Sobeck, Defendant's President and Vice President respectively. The

Defendant says that the reason for this standard practice is that the arbitrators have a specialized knowledge about the commodities industry and are better suited to deal with disputes between these companies.

Lastly, the Defendant alleges that the business relationship with the Plaintiffs deteriorated because the Plaintiffs stopped paying for their orders in a timely manner as of 2010. Because of the nature of the commodity shipping business, the outstanding accounts receivable for the Plaintiffs had to be paid before the Defendant could continue service. The Defendant alleges that it suffered financial damage and lost standing with its overseas suppliers due to the Plaintiffs refusal to pay.

## IV.  DISCUSSION

### A.

At the outset, the Defendant raises an issue as to the propriety of the Plaintiffs' affidavits from Mike Davis and John Runck. Specifically, the Defendant argues that affidavits made upon "knowledge, information, and belief" are insufficient to create a genuine issue of material fact.

The Plaintiffs argue that *City of Anniston v. Rosser*, 158 So. 2d 99 (Ala. 1969) supports the proposition that the entirety of Davis and Runck's affidavit testimony is appropriate to consider under Alabama law. In that case, the Supreme Court of Alabama determined whether an affidavit made on one's "knowledge, information and belief" was sufficient to meet the requirements of Section 504 of Title 37 of the 1940 Code of Alabama. The Court found that such an affidavit did meet the standard required by that particular statute, which concerned the method in which an individual makes a personal injury claim against any city or town. That case is unavailing to the Plaintiffs because this court is not faced with a claim arising under Section

504 of Title 37 of the 1940 Code of Alabama.  This court is faced with applying what amounts to a summary judgment standard, and the rules applicable to such a motion bind this court.

Despite the Plaintiffs' contentions, the Eleventh Circuit has said that "Rule 56(e)'s personal knowledge requirement prevents statements in affidavits that are based, in part, 'upon information and belief'—instead of only knowledge—from raising genuine issues of fact sufficient to defeat summary judgment." *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002).  Accordingly, any statements contained in Mike Davis and John Runk's affidavits which were made on their information and beliefs, instead of knowledge, will be insufficient to create a genuine issue of material fact.  Therefore, the court will disregard statements from Mike Davis and John Runck's affidavits which are based on the affiant's knowledge, information, and belief.

The statements from paragraphs 12, 13, 45, and 46 of Mike Davis's affidavit were made on his "knowledge, information, and belief," and are therefore insufficient for creating a genuine issue of material fact.  The court will not consider those paragraphs in the resolution of the motion presently before it.  However, the following facts from Mike Davis's affidavit are both relevant to the court's determination and not based in part on information and belief: Mike Davis has worked in the commodities industry for 25 year and is familiar with the practices of suppliers and buyers in the industry; based on his 25 years of experience, an agreement to resolve disputes solely by arbitration is not assumed in a commodity transaction; he is the individual responsible for the procurement of nut commodities for Flavor House; INA's sales order forms were a short pre-printed form that merely confirmed the terms of a particular order; INA's sales order forms sent to Flavor House did not contain any contractual terms and conditions; and INA did not

7

convey its "Terms and Conditions" form to Flavor House or explain that disputes between parties would be handled exclusively by arbitration during the communications associated with Blanket Contract Nos. 19230, 19231, and 19233. (Doc. # 25-1 at ¶¶ 2, 3, 9, 10, 24, 33, 42, 43, 44).

The statements from paragraphs 12, 13, 61, and 62 of John Runck's affidavit were made on his "knowledge, information, and belief," and are therefore insufficient for creating a genuine issue of material fact. The court will not consider those paragraphs in the resolution of the motion presently before it. However, the following facts are both relevant to the court's determination and not made in part on information and belief: John Runck has worked in the commodities industry for 15 year and is familiar with the practices of suppliers and buyers in the industry; based on his 15 years of experience, an agreement to resolve disputes solely by arbitration is not assumed in a commodity transaction; he is the individual responsible for the procurement of nut commodities for Harvest Manor; INA's sales order forms were a short pre-printed form that merely confirmed the terms of a particular order; INA's sales order forms sent to Harvest Manor did not contain any contractual terms and conditions; and INA did not convey its "Terms and Conditions" form to Harvest Manor or explain that disputes between parties would be handled exclusively by arbitration during the communications associated with Blanket Contract Nos. 19832, 19007, 20461, 21278, and 25077. (Doc. # 25-2 at ¶¶ 2, 3, 9, 10, 24, 32, 41, 43, 50, 58, 59, 60).

Accordingly, the evidence properly before the court are both parties' documentary evidence, the affidavits of Gene and Regina Sobeck from the Defendant, and the affidavits of

Runck, Davis, and Arreola, but not the statements based upon "knowledge, information, and belief" as explained above.

**B.**

As the Defendant states in its motion: "For the FAA to be applicable, there must be (1) an agreement in writing requiring arbitration; and (2) a transaction involving interstate commerce evidenced by the written agreement. 9 U.S.C. § 2." (Doc. # 13 at 7). Moreover, while the parties do not agree as to which state's law applies, both parties do agree that state contract law governs whether an arbitration agreement exists. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("state law generally governs whether an enforceable contract or agreement to arbitrate exists.").

Both Alabama law and New Jersey law require substantially identical elements in order to find the existence of a contract. More important for the case at bar is that both states require that all parties to a contract must assent to the terms of a contract before it can become binding on parties. *See I.C.E. Contractors, Inc. v. Martin & Cobey Const. Co., Inc.*, 58 So. 3d 723, 725 (Ala. 2010) ("In Alabama, one of the requisite elements of a valid contract is mutual assent to the essential terms of the contract."); *see also Cohn v. Fisher*, 287 A.2d 222, 224 (N.J. Super. Ct. Law. Div. 1972) ("The essentials of a valid contract are: mutual assent, consideration, legality of object, capacity of the parties and formality of memorialization.").

While it is clear that the Federal Arbitration Act "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983),

the issue before this court is not the scope of the arbitration clause but whether there exists a valid agreement to arbitrate.

The Plaintiffs deny ever entering into an arbitration agreement with the Defendant. Moreover, the Plaintiffs even go so far as to allege that the Defendant has altered the order confirmation form that it offered to this court in order to make it appear that the order confirmation forms contained the "Terms and Conditions" form.  The Plaintiffs substantiate their position with a copy of what they contend is the order confirmation form they actually received. Moreover, the Plaintiffs rely on Runck and Davis's affidavits which establish that INA's sale orders never contained "contractual terms and conditions." (Doc. # 25-1 at ¶ 10), (Doc. # 25-2 at ¶ 10).  The Defendant alleges that the confirmation form it offered, complete with the "Terms and Conditions" form attached, is the true form that it sent to the Plaintiffs.  It substantiates this with affidavits from Gene and Regina Sobeck which claim that it is INA's normal procedure to include such a form with its order confirmations.

This discrepancy in the facts is crucial to this court's decision as to whether to compel arbitration.  It is axiomatic that no party can be "be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).  Moreover, both Alabama state law and New Jersey state law require mutual assent to terms before those terms can become part of a contract.  It seems clear to the court that a party cannot assent to terms with which it was never presented. Because the record evidence establishes a conflict as to whether the Plaintiffs ever received a copy of the Defendant's "Terms and Conditions" form, the court finds that there exists a genuine

issue of material fact as to that. A fact determination must be had before this court can properly determine whether an enforceable arbitration agreement between the parties exists as a matter of law based on the express terms of a written agreement.

### C.

The Defendant argues, however, that there are alternative grounds on which the court could find in its favor. The first theory that the Defendant raises is that there is a "usage of trade" in the nut commodity industry to resolve disputes using binding arbitration.

Under Alabama law, which is taken from the U.C.C., "[a] 'usage of trade' is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage must be proved as facts." Ala. Code § 7-1-303(c). Moreover, Alabama Courts have found that "usage of trade, which we interpret to include industry custom (*see* Ala. Code (1975), § 7-1-205(2))[1], may be used to explain or supplement the parties' agreement contained in confirmatory memoranda." *American Carpet Sales, Inc. v. World Carpets, Inc.*, 477 So. 2d 974, 975 (Ala. Civ. App. 1985) (citing Ala. Code § 7-2-202 which says in pertinent part that "[t]erms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein . . . may be explained or *supplemented*: (a) By course of dealing or usage of trade. . ."). (emphasis added). In other

---

[1] According to the official comments of the current Ala. Code § 7-1-303(c), Ala. Code § 7-1-205 was the code section in which "usage of trade" was previously defined.

words, in the presence of adequate evidence, Alabama law[2] allows an industry custom to supplement the terms of confirmatory memoranda, like those at issue in the present case. Accordingly, if the record evidence demonstrates both that it is customary in the nut industry to arbitrate disputes and that the custom is not contrary to the express terms of the confirmatory memoranda at issue, the court should find that an arbitration clause was a part of the agreement between the parties. *See* Ala. Code § 7-1-303(e) (providing that "the express terms of an agreement and any applicable . . . usage of trade must be construed whenever reasonable as consistent with each other" but should those terms conflict, "[e]xpress terms prevail over . . . usage of trade").

The Defendant points to Gene and Regina Sobeck's affidavits which explain that it is customary in the nut industry to arbitrate disputes. *See* Doc. # 30-1 at ¶ 6; Doc. # 30-2 at ¶ 7. Also, the Defendant cites *Colorado-Arkansas-Texas Distributing, L.L.C. v. American Eagle Food Products, Inc.*, 525 F. Supp. 2d 428 (S.D.N.Y. 2007)[3], in support of its contention that it is customary in the nut industry to arbitrate disputes. *Id.* at 432 ("the Court finds, based on [*inter alia*] . . . (3) the common practice of the nut industry . . . that the parties reached an oral agreement" as to an arbitration agreement). However, Davis and Runck's affidavits, which state that it is not customary in the commodities industry to resolve disputes by binding arbitration, conflict with the Defendant's evidence.

---

[2] This result is consistent with New Jersey law as well. *See*, *e.g.*, *Corestar Intern. Pte. Ltd. v. LPB Communications, Inc.*, 513 F. Supp. 2d 107, 119 (D.N.J. 2007) (explaining that usage of trade may supplement the terms of an agreement and that express terms of an agreement and the usage of trade shall be construed as consistent where reasonable).

[3] The court notes the fact that Gene Sobeck was president of American Eagle Food Products, Inc.

As explained above, "[t]he existence and scope of . . . a usage must be proved as facts." Ala. Code § 7-1-303(c). Therefore, in order for the Defendant to demonstrate at this stage in the litigation whether a usage of trade exists, it must be established by the record. Because the Plaintiffs have properly disputed the Defendant's evidence as to the existence of a nut commodity industry usage of trade, the Plaintiffs have established a genuine issue as to the existence of this material fact. Until that fact is established, the court will not determine the legal consequence that the existence of a usage of trade would have in resolving the Defendant's motion.

The second alternate theory that the Defendant raises is that the course of dealings between the Defendant and the Plaintiffs establishes that disputes between the parties are to be resolved using binding arbitration.

Both New Jersey and Alabama law define "course of dealing" as "a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Ala. Code § 7-1-303(b); N.J. Stat. Ann. § 12A:1-205. A course of dealing between parties is "relevant not only to the interpretation of express contract terms, but may [itself] constitute contract terms." *Marshall Burbin Farms, Inc. v. Fuller*, 794 So. 2d 320, 325 (Ala. 2000) (quoting James J. White & Robert S. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 3-3, at 98 (2d ed. 1980)).

The Defendant argues that it sent written confirmations to the Plaintiffs on many occasions and that those confirmations contained the Defendant's "Terms and Conditions" form. The Defendant contends that the written confirmations it sent to the Plaintiffs constituted terms

13

of the agreements between the parties pursuant to § 2-207 of the Uniform Commercial Code. § 2-207 of the UCC, which has been adopted by both Alabama and New Jersey, allows for the terms of written confirmations sent by one merchant to another merchant to become part of the contract between the parties unless "(a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received." Ala. Code § 7-2-207; N.J. Stat. Ann. § 12A:2-207.  The Defendant argues, and the court agrees, that the record does not support exceptions (a) and (c). Furthermore, the Defendant contends that exception (b) does not apply because the record establishes that the nut commodities industry custom is to resolve disputes through arbitration, and, therefore, additional terms to that effect can not materially alter the sales order.  *See Atl. Textiles v. Avondale Inc. (In re Cotton Yarn Antitrust Litig.)*, 505 F.3d 274, 281 (4th Cir. 2007) (after finding that arbitrating disputes is a usage of trade in the textile industry, the court explained that the additional terms and conditions governing the arbitration process found in one merchant's written confirmation did not materially alter the agreement between the merchants); *Standard Bent Glass Corp. v. Glassrobots oy*, 333 F.3d 440, 448 (3d Cir. 2004) (finding no surprise or hardship about incorporating one merchant's standard arbitration agreement pursuant to U.C.C. § 2-207 because, *inter alia*, the arbitration agreement was undisputedly the standard in the glass industry).  To summarize, the Defendant's position is as follows: the record establishes that the Plaintiffs received written confirmations from the Defendant each of which contained a copy of  the Defendant's "Terms and Conditions" form; the "Terms and Conditions" form contained the industry-standard arbitration clause; pursuant to U.C.C. § 2-207, the terms found on these written confirmations are binding on the Plaintiffs;

and, lastly, the transactions between the parties created a course of dealings between the parties wherein the Defendant was justified in believing that arbitration would govern any disputes arising out of any sales agreement between the parties.

The Defendant's theory fails for one central reason: the record does not support the factual conclusions relied on by the Defendant. As the court has already explained, there is a genuine issue of material fact as to whether using arbitration to resolve disputes is a usage of trade in the nut commodities industry. Therefore, the Defendant cannot rely on the existence of that usage of trade at this stage in the litigation. Also, the Defendant's theory necessarily relies on a factual finding that the Plaintiffs received the "Terms and Conditions" form at a relevant time. The Plaintiffs have disputed that with affidavit testimony. Therefore, the court finds that there exists a genuine issue of material fact as to whether the Plaintiffs ever received the Defendant's "Terms and Conditions" form, and this precludes finding in the Defendant's favor as to its course of dealings theory.[4]

Based on the foregoing discussion, the court will DENY the Defendant's Motion to Compel Arbitration and, as a jury trial has been requested by the Plaintiffs, set this matter to be heard by a jury to determine the factual disputes material to finding whether the parties entered into an agreement to arbitrate.

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

---

[4] Because of the unresolved questions of fact, the court need not determine at this time whether an arbitration clause constitutes a material alteration to a sales agreement between merchants under either Alabama or New Jersey's codification of U.C.C. § 2-207.

1. Motion to Dismiss or in the Alternative Motion to Compel Arbitration and Stay (Doc. #13) is DENIED.

2. The court will enter a separate order setting a jury trial to resolve the present dispute.

Done this 19th day of June, 2012.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE